JUDGE BATTS



08 CV 7162

LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue, 26th Floor
New York, New York 10022
(212) 947-4700
Attorneys for Defendants
Siméus Foods International, Inc.,
Siméus Holdings, Inc.,
PTF Acquisition Corp. and
Siméus Foods International – Forest City

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

D.B. ZWIRN SPECIAL OPPORTUNITIES FUND          08 Civ. _____
L.P. in its capacity as Administrative Agent,

                              Plaintiff,          **NOTICE OF REMOVAL**

        -against-

SIMÉUS FOODS INTERNATIONAL, INC.,
SIMÉUS HOLDINGS, INC., PTF ACQUISITION
CORP., AND SIMÉUS FOODS INTERNATIONAL -
FOREST CITY, INC.

                              Defendants.
-----------------------------------------------------------------------X

RECEIVED AUG 11 2008 U.S.D.C. S.D. N.Y. CASHIERS

To the United States District Court for the Southern District of New York:

1.    Siméus Foods International, Inc., Siméus Holdings, Inc., PTF Acquisition Corp.

and Siméus Foods International – Forest City, by and through their attorneys Locke Lord Bissell

& Liddell LLP,  respectfully gives notice of the removal to this Court of a civil action filed in the

Supreme Court of the State of New York, County of New York, bearing the caption "*D.B. Zwirn*

*Special Opportunities Fund L.P. in its capacity as Administrative Agent, v. Siméus Foods*

LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue, 26th Floor
New York, New York 10022
(212) 947-4700
Attorneys for Defendants
Siméus Foods International, Inc.,
Siméus Holdings, Inc.,
PTF Acquisition Corp. and
Siméus Foods International – Forest City

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

D.B. ZWIRN SPECIAL OPPORTUNITIES FUND                    08 Civ. _____
L.P. in its capacity as Administrative Agent,

                               Plaintiff,                    **NOTICE OF REMOVAL**

     -against-

SIMÉUS FOODS INTERNATIONAL, INC.,
SIMÉUS HOLDINGS, INC., PTF ACQUISITION
CORP., AND SIMÉUS FOODS INTERNATIONAL -
FOREST CITY, INC.

                            Defendants.
-----------------------------------------------------------------------X

To the United States District Court for the Southern District of New York:

    1.    Siméus Foods International, Inc., Siméus Holdings, Inc., PTF Acquisition Corp.

and Siméus Foods International – Forest City, by and through their attorneys Locke Lord Bissell

& Liddell LLP,  respectfully gives notice of the removal to this Court of a civil action filed in the

Supreme Court of the State of New York, County of New York, bearing the caption "*D.B. Zwirn*

*Special Opportunities Fund L.P. in its capacity as Administrative Agent, v. Siméus Foods*

*International, Inc., Siméus Holdings, Inc., PTF Acquisition Corp. and Siméus Foods*
*International – Forest City*," Index No.: 604004/07.

2.    Defendants remove this action pursuant to 28 U.S.C. § 1441(a). This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.    Defendant Siméus Foods International, Inc. is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Texas.

4.    Defendant Siméus Holdings, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Texas.

5.    Defendant PTF Acquisition Corp. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Texas.

6.    Defendant Siméus Foods International – Forest City is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in North Carolina.

7.    Plaintiff D.B. Zwirn Special Opportunities Fund L.P. ("Zwirn") is a partnership organized under the laws of Delaware whose partners, upon information and belief, are resident in New York, New York.

8.    The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs. Zwirn asserts two breach of contract claims apparently seeking a judgment for payments allegedly due and owing under a credit agreement. It is clear from the face of the Complaint that the amount that Zwirn seeks is in excess of $800,000.

9.   This action is pending in the Supreme Court of the State of New York, County of New York. Pursuant to 28 U.S.C. § 1441(a), the United States District Court for the Southern District of New York is the proper forum for removal.

10. Plaintiff served Defendants Siméus Foods International, Inc., Siméus Holdings, Inc., PTF Acquisition Corp. and Siméus Foods International – Forest City with a Summons and Notice on or about December 6, 2007. Pursuant to CPLR 3011, this Notice does not constitute a pleading.

11. Plaintiff served Defendants Siméus Foods International, Inc., Siméus Holdings, Inc., PTF Acquisition Corp. and Siméus Foods International – Forest City with their initial pleading – a complaint – on July 21, 2008. Therefore, this Notice of Removal is timely under 28 U.S.C. § 1446(b). Copies of the Summons, Complaint, motions and orders served upon Defendants are attached hereto as Exhibit "A".

12. Defendants Siméus Foods International, Inc., Siméus Holdings, Inc., PTF Acquisition Corp. and Siméus Foods International – Forest City will provide written notice of the filing of this Notice of Removal to counsel for Zwirn, as required by 28 U.S.C. § 1446(d).

13. A copy of this Notice of Removal will be filed with the Clerk of the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. § 1446(d).

Dated: New York, New York
August 11, 2008

R. James DeRose, III (RD 9660)
LOCKE LORD BISSELL &
LIDDELL LLP
885 Third Avenue
New York, New York 10022
(212) 947-4700

Of Counsel:
LOCKE LORD BISSELL &
LIDDELL LLP
Jack E. Jacobsen
Robert T. Mowrey
Jason L. Sanders
2200 Ross Avenue Suite 2200
Dallas, Texas 75201
(214) 740-8000

*Attorneys for Siméus Foods Int'l, Inc.,*
*Siméus Holdings, Inc.,*
*PTF Acquisition Corp. and*
*Siméus Foods International – Forest City*

To:     George Royal V
        Jeroen van Kwawegen
        LATHAM & WATKINS LLP
        885 Third Avenue
        New York, New York 10022
        (212) 906-1200

        *Attorneys for D.B. Zwirn*
        *Special Opportunities Fund L.P.*

# EXHIBIT A

THIS CITATION WAS
DELIVERED TO YOU
6 DAY OF *December* 07
BY _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

D.B.ZWIRN SPECIAL OPPORTUNITIES FUND,
L.P., in its capacity as Administrative Agent,

                                Plaintiff,

    -against-

SIMÉUS FOODS INTERNATIONAL, INC.,
SIMÉUS HOLDINGS, INC., PTF ACQUISITION
CORP., and SIMÉUS FOODS INTERNATIONAL –
FOREST CITY, INC.

                              Defendants.

Index No. 604004 /07

Date Purchased: December 5, 2007

**SUMMONS WITH NOTICE**

Plaintiff designates New York County
as the place of trial.

The bases of this venue are CPLR §501,
§503(a) and §509.

Plaintiff resides at 745 Fifth Avenue,
18th Floor, New York, New York 10151

To the above-named Defendants:

      **YOU ARE HEREBY SUMMONED** to serve a notice of appearance on Plaintiff's
attorneys, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022-4802,
within twenty (20) days after the service of this summons, exclusive of the day of service (or
within (30) days after the service is complete if this summons is not personally delivered to you
within the State of New York), and in case of your failure to appear, judgment will be taken
against you by default for the relief demanded in the notice set forth below.

Dated: New York, New York
       December 5, 2007

                        LATHAM & WATKINS LLP

                        By: _____
                             Blair G. Connelly
                             George Royle V

                        885 Third Avenue
                        New York, NY 10022
                        (212) 906-1200

                        Attorneys for *D.B. Zwirn Special Opportunities
                        Fund, L.P.*

**NOTICE:**

The nature of this action is for breach of that certain Credit and Guaranty Agreement (as amended through the date hereof, the "Credit Agreement"), dated as of May 2, 2006, among Defendants Siméus Foods International, Inc. ("Siméus"), Siméus Holdings, Inc., PTF Acquisition Corp., and Siméus Foods International – Forest City, Inc. (collectively, the "Guarantors"), Plaintiff D.B. Zwirn Special Opportunities Fund, L.P. ("D.B. Zwirn") in its separate capacities as Administrative Agent and Collateral Agent, and the Lenders party thereto.[1]

Specifically, Events of Default have occurred under the Credit Agreement as follows:

1. Siméus Holdings, Inc. has permitted the Leverage Ratio as of the last day of the Fiscal Quarter ended September 30, 2007, to exceed 4.60:1.00, in violation of the covenant contained in section 6.8(a) of the Credit Agreement;

2. Siméus Holdings, Inc. has permitted the Consolidated Adjusted EBITDA as at the end of the Fiscal Quarter ended September 30, 2007, to be less than $7,302,000, in violation of the covenant contained in section 6.8(b) of the Credit Agreement; and

3. Siméus and the Guarantors have failed to record amended Mortgages, and to deliver reasonably requested documents to D.B. Zwirn within 60 days after the Second Amendment Date, in violation of the covenant contained in section 5.21(d) of the Credit Agreement.

Despite these Events of Default, which D.B. Zwirn has not waived, Siméus and the Guarantors have breached their obligation pursuant to section 2.11 of the Credit Agreement to make payments of Default Interest.

By this action, D.B. Zwirn seeks relief in the form of:

(a) damages in an amount no less than $145,486.60;

(b) all costs and expenses (including reasonable attorney's fees) to which D.B. Zwirn is entitled pursuant to section 10.2 of the Credit Agreement; and

(c) such other relief as the Court deems just and appropriate.

---

[1]     Any capitalized terms that are not defined herein shall have the meaning ascribed to them in the Credit Agreement.

To:

SIMÉUS FOODS INTERNATIONAL, INC.
812 South 5th Avenue
Mansfield, TX  76063

SIMÉUS HOLDINGS, INC.
812 South 5th Avenue
Mansfield, TX  76063

PTF ACQUISITION CORP.
812 South 5th Avenue
Mansfield, TX  76063

SIMÉUS FOODS INTERNATIONAL –
FOREST CITY, INC.
812 South 5th Avenue
Mansfield, TX  76063

# COMPLETE
# THIS STUB

Endorse This INDEX NUMBER ON All
Papers and advise your adversary of
the number assigned. Sec. 202.5,
Uniform Rules Of Trial Courts

DO NOT DETACH

Title of Action or Proceeding to be TYPED or PRINTED by applicant
SUPREME COURT, NEW YORK COUNTY

DB ZWIRN SPECIAL OPPORTUNITIES FUND
V.

SIMEUS FOODS INTERNATIONAL, et al

**INDEX NUMBER**
$210.00

07604004



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
D.B. ZWIRN SPECIAL OPPORTUNITIES FUND,:
L.P., in its capacity as Administrative Agent,

                                :

                    Plaintiff,

        vs.                       :      Index No. 604004/07

SIMÉUS FOODS INTERNATIONAL, INC.,    :   **DEMAND FOR COMPLAINT**
SIMÉUS HOLDINGS, INC., PTF ACQUISITION
CORP., and SIMÉUS FOODS INTERNATIONAL :
– FOREST CITY, INC.

                                  :

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

       **SIMÉUS FOODS INTERNATIONAL, INC., SIMÉUS HOLDINGS, INC., PTF**

**ACQUISITION CORP., and SIMÉUS FOODS INTERNATIONAL – FOREST CITY,**

**INC.** ("Siméus"), the defendants herein, hereby demands that a copy of the complaint in the

above entitled action be served upon Siméus' counsel, R. James DeRose, III, Esq. of the firm

Locke Lord Bissell & Liddell LLP, at the location set forth below.

Dated: New York, New York
June 30, 2008

LOCKE LORD BISSELL & LIDDELL LLP

By: _____
R. James De Rose, III
885 Third Avenue
New York, New York 10022
(212) 812-8300

ATTORNEYS FOR DEFENDANTS, SIMÉUS FOODS
INTERNATIONAL, INC., SIMÉUS HOLDINGS, INC., PTF
ACQUISITION CORP., AND SIMÉUS FOODS
INTERNATIONAL – FOREST CITY, INC.

Of Counsel:
JACK E. JACOBSEN
ROBERT T. MOWREY
JASON L. SANDERS
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(713) 226-1200 (Telephone)


TO:    Blair G. Connelly, Esq.
       Latham & Watkins LLP
       885 Third Avenue
       New York, NY 10022
       (212) 906-1200
       *Attorneys for Plaintiff D.B. Zwirn*
       *Special Opportunities Fund, L.P.,*
       *in its capacity as Administrative Agent*

NYC 70247v.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| D.B.ZWIRN SPECIAL OPPORTUNITIES FUND, L.P., in its capacity as Administrative Agent,<br><br>                                             Plaintiff,<br><br>      -against-<br><br>SIMÉUS FOODS INTERNATIONAL, INC., SIMÉUS HOLDINGS, INC., PTF ACQUISITION CORP., and SIMÉUS FOODS INTERNATIONAL – FOREST CITY, INC.<br><br>                                             Defendants. | Index No. 604004/07<br><br><br>**COMPLAINT** |

D.B. Zwirn Special Opportunities Fund, L.P. ("Zwirn"), in its capacity as Administrative Agent, by its undersigned attorneys, Latham & Watkins LLP, for its complaint against defendants Siméus Foods International, Inc. ("Siméus"), and Siméus Holdings, Inc. ("Holdings"), PTF Acquisition Corp. ("PTF"), and Siméus Foods International - Forest City, Inc. ("Forest City") (collectively the "Guarantors", and together with Siméus the "Defendants"), alleges as follows:

## NATURE OF THIS ACTION

1.      This is an action for breach of contract.  Plaintiff is the Administrative Agent for the lender, and defendants are the borrower and guarantors, respectively, under a credit agreement pursuant to which defendants agreed to repay loans and pay certain expenses, and to operate their business within certain financial parameters.  Defendants have failed to satisfy these obligations, and admit that they are in default under the terms of the credit agreement.  Plaintiff seeks judgment for the payments due and owing under the credit agreement.

## THE PARTIES

2.    Plaintiff D.B. Zwirn Special Opportunities Fund, L.P. is a limited partnership organized under the laws of Delaware with its principal place of business in the state of New York.

3.    Defendant Siméus Holdings, Inc. is a Delaware corporation with its principal place of business in the state of Texas.

4.    Defendant PTF Acquisition Corp. is a Delaware corporation with its principal place of business in the state of Texas, and is a wholly-owned subsidiary of Defendant Siméus Holdings, Inc.

5.    Defendant Siméus Foods International, Inc. is a Texas corporation with its principal place of business in the state of Texas, and is a wholly-owned subsidiary of Defendant Defendant PTF Acquisition Corp.

6.    Defendant Siméus Foods International - Forest City, Inc. is a Delaware corporation with its principal place of business in the state of North Carolina, and is a wholly-owned subsidiary of Defendant Siméus Foods International, Inc.

## JURISDICTION AND VENUE

7.    The Court has subject matter jurisdiction over the present action pursuant to Judiciary Law §140-b.

8.    The Court has personal jurisdiction over Siméus and the Guarantors pursuant to CPLR §§ 301 and 302. Siméus and the Guarantors have irrevocably consented to personal jurisdiction in this Court.

9.    Venue is proper in New York County pursuant to CPLR §501, §503(a) and §509.

2

## GENERAL ALLEGATIONS

I.   **AS BORROWERS AND GUARANTORS UNDER THE CREDIT AGREEMENT, DEFENDANTS AGREED TO MAKE CERTAIN PAYMENTS, AND TO OPERATE WITHIN CERTAIN FINANCIAL PARAMETERS**

10.    Defendants are parties to that certain Credit and Guaranty Agreement, dated as of May 2, 2006, among Siméus Foods International, Inc. as Company, and Siméus Holdings, Inc., PTF Acquisition Corp., and Siméus Foods International - Forest City, Inc. as Guarantors, and D.B. Zwirn Special Opportunities Fund, L.P., in its separate capacities as Administrative Agent, Collateral Agent, and Lender (the "Credit Agreement").

11.    Under the initial terms of the Credit Agreement, Siméus obtained access to a line of credit for an aggregate principal amount of $35,000,000, consisting of a $30,000,000 term loan ("Term Loan") and $5,000,000 in revolving commitments ("Revolver"). The Credit Agreement has since been amended to give Siméus access to a separate $4,000,000 term loan ("Term Loan A1"), and to reduce the amount available under the Revolver to $3,500,000.

A.   **The Credit Agreement Requires Simeus To Pay Interest And Certain Expenses, And To Perfect Certain Security Interests**

12.    Siméus agreed to pay interest on any outstanding loans under the Credit Agreement. Section 2.9 of the Credit Agreement provides that the Term Loan and the Revolver will each bear interest on unpaid amounts under each loan at a defined base rate plus a defined applicable margin. Siméus must pay interest under section 2.9 on the last day of each month with respect to interest accrued on and to each such payment date.

13.    Siméus also agreed to pay default interest on any outstanding loans under the Credit Agreement, and on any interest payments owed with respect to any such outstanding

3

loans, upon the occurrence and during the continuance of an Event of Default, as defined under the Credit Agreement. Section 2.11 of the Credit Agreement, labeled "Default Interest," provides that upon the occurrence and during the continuance of an Event of Default, "the principal amount of all Loans outstanding and […] any interest payments on the Loans or any fees or other amounts owed thereunder, shall thereafter bear interest […] payable on demand at a rate that is 3% per annum in excess of the interest otherwise payable" under the Credit Agreement.

14.    Siméus also agreed to pay for Zwirn's costs and expenses in enforcing any obligations under the Credit Agreement. In Section 10.2(i) of the Credit Agreement, labeled "Expenses," Siméus agreed to promptly pay "all costs and expenses, including reasonable attorneys' fees […] and costs of settlement incurred by [Zwirn] in enforcing any Obligations of or in collecting any payments due from [Siméus and the Guarantors] hereunder or under the other Credit Documents by reason of such Default or Event of Default […] or in connection with any refinancing or restructuring of the credit arrangements provided hereunder in the nature of a work-out."

15.    Siméus also agreed to pay Zwirn's legal fees and expenses in relation to the Credit Agreement. Section 10.2(c) of the Credit Agreement provides that Simeus must promptly pay "the reasonable fees, expenses and disbursements of counsel to [Zwirn] (in preparation, execution and administration of the Credit Documents and any consents, amendments, waivers or other modifications thereto and any other documents or matters requested by [Siméus]." The term "Credit Documents" is defined in the Credit Agreement to include the Credit Agreement itself, and certain defined notes and collateral documents.

4

16.     Siméus also agreed to perfect certain security interests for Zwirn's benefit. Section 3.1(h) of the Credit Agreement requires Simeus to create in favor of Zwirn perfected first priority security interest in certain real estate assets, and to provide Zwirn with fully executed and notarized mortgages and an opinion of counsel with respect to the enforceability of the form of mortgages to be recorded.

**B.      The Credit Agreement Requires Holdings To Operate Within Certain Financial Parameters**

17.     The Credit Agreement sets forth certain financial parameters within which defendant Holdings, Siméus' corporate parent and a guarantor under the Credit Agreement, agreed to operate.

18.     Holdings agreed to maintain minimum levels of Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA"). Section 6.8(b) of the Credit Agreement requires that as of the end of each fiscal quarter during the term of the Credit Agreement, Holdings cannot permit "Consolidated Adjusted EBITDA" to be less than certain amounts set forth in the Credit Agreement for each of the fiscal quarters from June 30, 2006 through March 31, 2010.

19.     Holdings also agreed to maintain a maximum defined "Leverage Ratio" of debt to EBITDA. Section 6.8(a) of the Credit Agreement requires that Holdings cannot permit the Leverage Ratio to exceed certain ratios set forth in the Credit Agreement for the fiscal quarters from June 30, 2006 through March 31, 2010.

20.     Holdings also agreed to maintain a minimum defined "Fixed Charge Coverage Ratio" of EBITDA to certain fixed charges. Section 6.8(d) of the Credit Agreement requires Holdings not to permit the Fixed Charge Coverage Ratio to be less than certain ratios set forth in the Credit Agreement for the fiscal quarters from June 30, 2006 through March 31, 2010.

C.    **The Terms Of The Credit Agreement Were Modified In Two
Amendments**

21.    On January 18, 2007, Siméus, the Guarantors and Zwirn entered into the First

Amendment To Credit and Guaranty Agreement ("First Amendment").

22.    The First Amendment modified the definition of Consolidated Adjusted

EBITDA for the fiscal quarter ending December 31, 2006 and, as needed, through September 30,

2007.

23.    The First Amendment also modified the maximum Leverage Ratios for the

fiscal quarters ending December 31, 2006, April 1, 2007 and July 1, 2007.

24.    The First Amendment also provided that the interest rate on the Term Loan and

the Revolver would be increased by 1.5% from December 1, 2006 until Siméus would no longer

need to include certain additional start-up costs and expenses in its EBITDA to achieve

Holdings' compliance with the minimum financial parameters and financial ratios in Section 6.8

of the Credit Agreement, not to extend past September 30, 2007.  This additional interest was

excluded from the calculation of the Fixed Charge Coverage Ratio.

25.    On May 3, 2007, Siméus, the Guarantors and Zwirn entered into the Second

Amendment To Credit and Guaranty Agreement ("Second Amendment").

26.    The Second Amendment modified the definition of Consolidated Adjusted

EBITDA for any period to account for the start-up costs and expenses incurred by Siméus with

respect to an acquisition.

27.    The Second Amendment also increased the minimum Consolidated Adjusted

EBITDA amounts set forth in the table in Section 6.8(b) for the fiscal quarters from March 31,

2008 through March 31, 2010.

28.    The Second Amendment also modified the maximum Leverage Ratios for the fiscal quarters ending September 30, 2007 and December 31, 2007.

29.    The Second Amendment also reduced the Revolver to $3,500,000 and added a new "Term Loan A1" of $4,000,000 to the credit facility. Under the terms of the Second Amendment, Siméus could request term loans under Term Loan A1 by means of a funding notice through December 31, 2007. The Second Amendment provided that each loan outstanding under new Term Loan A1 would bear payment-in-kind interest ("PIK interest").

30.    The Second Amendment also inserted new subsection 5.21(d) into the Credit Agreement. Section 5.21(d) stated:

> As soon as practical but in any event not later than 60 days after the Second Amendment Date (or such longer period deemed reasonably necessary by [Zwirn], each Mortgage shall be amended to account for the Loans made on the Second Amendment Date and recorded in all applicable jurisdictions and [Zwirn] shall have received such other documents (including endorsements to the Title Policies, to the extent available, and legal opinions) as [Zwirn] shall reasonably request.

**D.    The Credit Agreement Required Holdings To Regularly Send Zwirn Financial Statements, And A Statement Certifying Compliance With The Financial Parameters Or Notifying Zwirn Of Any Event Of Default**

31.    Section 5 of the Credit Agreement, labeled "Affirmative Covenants," requires Holdings to deliver to Zwirn quarterly financial statements within 45 days after the end of each of the first three fiscal quarters of each fiscal year, and to provide annual financial statements within 120 days after the end of the fiscal year.

32.    Section 5.1(d), labeled "Compliance Certificate," requires Holdings to provide a "duly executed and completed Compliance Certificate" together with the financial statements. Under that section, Holdings must certify in each quarterly Compliance Certificate whether it has "knowledge of the existence of any condition or event which constitutes an Event of Default or

Default during or at the end of the accounting period covered by the attached financial statements."

**E.    Events of Default Under The Credit Agreement Occur If Siméus Fails To Make Payments Or Holdings Fails To Operate Within The Agreed Financial Parameters**

33.    Section 8.1 of the Credit Agreement describes circumstances and events that constitute Events of Default.  Section 8.1(a) of the Credit Agreement, labeled "Failure To Make Payments When Due,"  provides that an Event of Default occurs when Siméus fails to pay:

(i)    when due any installment of principal of any Term Loan, whether at stated maturity, by acceleration, by notice of voluntary prepayment, by mandatory prepayment or otherwise; or

(ii)    any interest on any Term Loan or any fee or any other amount due hereunder within three days after the date due.

34.    A failure by Siméus to promptly pay default interest pursuant to section 2.11 of the Credit Agreement constitutes and Event of Default under Section 8.1(a) of the Credit Agreement.

35.    A failure by Siméus to promptly pay the reasonable fees, expenses and disbursements of counsel to Zwirn in preparation, execution and administration of the Credit Agreement, including related credit documents and amendments, pursuant to Section 10.2(c) of the Credit Agreement constitutes an Event of Default under the Credit Agreement.

36.    A failure by Siméus to promptly pay Zwirn's costs and expenses in enforcing any obligations under the Credit Agreement pursuant to section 10.2(i) of the Credit Agreement constitutes an Event of Default under the Credit Agreement.

37.    Section 8.1(b) of the Credit Agreement, labeled "Default in Other Agreements," provides that an Event of Default occurs in case of "breach or default by [Siméus] with respect to any material term of ... any loan agreement, mortgage, indenture or other

8

agreement relating to such item(s) of Indebtedness, in each case beyond the grace period, if any provided therefore."

38.    A failure by Siméus to comply with Section 5.21(d) of the Credit Agreement by not providing, within the grace period, requested documentation showing that mortgages were amended to account for loans made pursuant to the Second Amendment (including endorsements to the Title Policies, to the extent available, and legal opinions) constitutes an Event of Default under the Credit Agreement.

39.    Section 8.1(c) of the Credit Agreement, labeled "Breach of Certain Covenants," provides that an Event of Default occurs when Siméus or Holdings fails to "perform or comply with any term or condition contained in … Section 6."

40.    A failure by Holdings to maintain the required minimum Consolidated Adjusted EBITDA under Section 6.8 of the Credit Agreement (as amended by the First and Second Amendments), constitutes an Event of Default under the Credit Agreement.

41.    A failure by Holdings to maintain the required maximum Leverage Ratio under Section 6.8 of the Credit Agreement (as amended by the First and Second Amendments), constitutes an Event of Default under the Credit Agreement.

42.    A failure by Holdings to maintain the required minimum Fixed Charge Coverage Ratio under Section 6.8 of the Credit Agreement (as amended by the First and Second Amendments), constitutes an Event of Default under the Credit Agreement.

## II.    THE GUARANTORS GUARANTEED SIMÉUS' PAYMENT OBLIGATIONS UNDER THE CREDIT AGREEMENT

43.    Holdings, Forest City, and PTF are each a "Guarantor" under the Credit Agreement.

44.    Section 7.1 of the Credit Agreement, labeled "Guaranty of the Obligations," provides that "Guarantors jointly and severally hereby irrevocably and unconditionally guaranty to [Zwirn] for the ratable benefit of [Zwirn and other lenders] the due and punctual payment in full of all Obligations when the same shall become due."

45.    The "Obligations" that the Guarantors guaranteed include payments for principal, interest, fees, and expenses, including but not limited to payments pursuant to section 2.11, 10.2(c), and 10.2(i) of the Credit Agreement.

46.    If Siméus fails to make any of the payments that are guaranteed under Section 7.1 of the Credit Agreement, then the Guarantors are required to make those payments to Zwirn. Section 7.3 of the Credit Agreement, labeled "Payment by Guarantors," provides:

> Guarantors hereby jointly and severally agree ... that upon failure by [Siméus] to pay any of the Guaranteed Obligations [as defined in Section 7.1] when and as the same shall become due, whether at stated maturity, by ... demand, or otherwise, ... Guarantors will upon demand pay, or cause to be paid, in Cash, to [Zwirn] for the ratable benefit of [Zwirn and any other Lender], an amount equal to the sum of the unpaid principal amount of all Guaranteed Obligations then due as aforesaid, accrued, and unpaid interest on such Guaranteed Obligations ... and all other Guaranteed Obligations then owed to [Zwirn and any other Lender]."

## III.    DESPITE THE OCCURRENCE AND CONTINUANCE OF EVENTS OF DEFAULT SINCE SEPTEMBER 30, 2007, SIMÉUS AND THE GUARANTORS HAVE FAILED TO MAKE REQUIRED PAYMENTS UNDER THE CREDIT AGREEMENT

### A.    Multiple Events Of Default Occurred And Continued To Occur Beginning In The Fiscal Quarter That Ended September 30, 2007

47.    As of the last day of the fiscal quarter ending September 30, 2007, the Leverage Ratio exceeded the maximum ratio agreed upon under the Credit Agreement (as amended).

48.    As of the last day of the fiscal quarter ending September 30, 2007, the Fixed Charge Coverage Ratio was less than the minimum ratio agreed upon under the Credit Agreement (as amended).

49.    As of the last day of the fiscal quarter ending September 30, 2007, the "Consolidated Adjusted EBITDA" was less than the minimum amount agreed upon under the Credit Agreement (as amended).

50.    As of September 30, 2007, Siméus had not provided Zwirn with all mortgage-related documentation that was requested by Zwirn pursuant to Section 5.21(d) within the grace period provided in the Credit Agreement.

51.    By letter dated November 5, 2007, Zwirn gave Siméus and the Guarantors notice of the Events of Default described in paragraphs 47 through 49 above.

52.    In the November 5, 2007 notice, Zwirn made demand for payment of default interest with respect to the principal amount of all outstanding loans under the credit facility and any other fees or amounts owed under the Credit Agreement. Accrual of the default interest was deemed to have commenced on October 1, 2007.

53.    On November 16, 2007, Zwirn gave Siméus and the Guarantors notice of the Event of Default described in paragraph 50 above.

54.    Siméus and the Guarantors received the November 5 and November 16 notices.

**B.    Holdings' Independent Auditor Determined That Events Of Default Had Occurred**

55.    On or about May 8, 2008, Holdings' independent auditor Weaver and Tidwell LLP ("Independent Auditor") sent a consolidated financial report regarding Holdings and its subsidiaries to the Holdings board of directors and shareholders.

11

56.     The Independent Auditor stated in its May 8, 2008 independent auditor's report that "at December 31, 2007, the Company … is in default on certain loan covenants."

57.     The Independent Auditor stated in Note 7 ("Credit Facilities") to the consolidated financial statements as of December 31, 2007 that "[t]he new Term Loan and Revolver from the May 2, 2006 recapitalization have certain financial ratios including the following: consolidated adjusted EBITDA, leverage ratio, fixed charge coverage ratio and an amount of capital expenditures within prescribed limits."

58.     The Independent Auditor stated in Note 7 ("Credit Facilities") to the consolidated financial statements as of December 31, 2007 that "[t]he Company is not in compliance with all covenants as of December 31, 2007."

59.     The Independent Auditor stated in Note 15 ("Going Concern") to the consolidated financial statements as of December 31, 2007 that "at December 31, 2007, the Company has defaulted on several of its debt obligations."

C.      **Siméus Admitted That Events Of Default For The Quarters Ending December 31, 2007, and March 30, 2008, Occurred And Are Continuing**

60.     On or about June 28, 2008, Siméus' President, Kelly S. Hansen, signed Compliance Certificates to be provided with the financial statements for the fiscal periods ending December 31, 2007 and March 30, 2008 pursuant to Section 5.1(d) of the Credit Agreement.

61.     In the Compliance Certificate provided with the financial statements for the fiscal period ending December 31, 2007, Siméus' President certified that he reviewed the terms of the Credit Agreement (as amended) and that this examination "did disclose, and I have knowledge of, the existence of a condition or event which constitutes an Event of Default or Default during or at the end of the accounting period covered by the attached financial statements or as of the date of this Certificate."

12

62.    In the Compliance Certificate provided with the financial statements for the fiscal period ending March 30, Siméus' President certified that he reviewed the terms of the Credit Agreement (as amended) and that this examination "did disclose, and I have knowledge of, the existence of a condition or event which constitutes an Event of Default or Default during or at the end of the accounting period covered by the attached financial statements or as of the date of this Certificate."

**D.    Siméus and The Guarantors Have Failed To Make All Payments That Are Due And Outstanding Under The Credit Agreement**

63.    As of the date of this Complaint, default interest is due and outstanding under section 2.11 of the Credit Agreement.

64.    As of the date of this Complaint, costs and expenses are due and outstanding under section 10.2(c) of the Credit Agreement.

65.    Siméus has not made all outstanding payments to Zwirn for default interest that are due under section 2.11 of the Credit Agreement.

66.    Siméus has not made all payments to Zwirn for outstanding costs and expenses due under section 10.2(c) of the Credit Agreement.

67.    The Guarantors have not made all outstanding payments to Zwirn for default interest that are due under section 2.11 of the Credit Agreement.

68.    The Guarantors have not made all payments to Zwirn for outstanding costs and expenses due under section 10.2(c) of the Credit Agreement.

13

## CAUSES OF ACTION

### COUNT I
### (as to Siméus)
### BREACH OF CONTRACT

69.    Zwirn repeats and re-alleges paragraphs 1-68 above as if fully set forth herein.

70.    Events of Default occurred no later than September 30, 2007 and are continuing under the Credit Agreement.

71.    Siméus has failed to comply with its obligations under the Credit Agreement, including but not limited to its obligations to pay all outstanding default interest, and fees and expenses pursuant to sections 2.11, and 10.2(c) of the Credit Agreement.

72.    Siméus is in breach of the Credit Agreement, and is obligated to pay the outstanding default interest, fees and expenses pursuant to sections 2.11, and 10.2(c) of the Credit Agreement, as well as costs and expenses that are due under section 10.2(i) of the Credit Agreement.

### COUNT II
### (as to the Guarantors)
### BREACH OF CONTRACT

73.    Zwirn repeats and re-alleges paragraphs 1-68 above as if fully set forth herein.

74.    Events of Default occurred no later than September 30, 2007 and are continuing under the Credit Agreement.

75.    Siméus has failed to comply with its obligations under the Credit Agreement, including but not limited to its obligations to pay default interest, and fees and expenses pursuant to sections 2.11 and 10.2(c) of the Credit Agreement.  Siméus is also obligated to pay the outstanding costs and expenses pursuant to section 10.2(i) of the Credit Agreement.

14

76.     The Guarantors jointly and severally agreed in Section 7.3 of the Credit Agreement to pay these outstanding amounts to Zwirn. The Guarantors have failed, however, to make all payments that are outstanding and due, and are in breach of the Credit Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment for Plaintiff as follows:

(1)     That Defendants be ordered to jointly and severally pay Plaintiff any and all default interest to which Plaintiff is entitled by reason of the Credit Agreement (as amended), such amount to be no less than $607,100;

(2)     That Defendants be ordered to jointly and severally pay Plaintiff its costs and expenses, and the outstanding reasonable fees, expenses and disbursements of counsel to Zwirn to which Plaintiff is entitled by reason of Section 10.2(c) of the Credit Agreement, such amount to be no less than $292,243;

(3)     That Defendants be ordered to jointly and severally pay Plaintiff its costs and expenses, and the outstanding reasonable fees, expenses and disbursements of counsel to Zwirn to which Plaintiff is entitled by reason of Section 10.2(i)of the Credit Agreement, such amount to be no less than $23,886; and

(4)     That Plaintiff be awarded such additional and further relief as the Court may deem proper and just.

Dated: New York, New York
   July 21, 2008

       Respectfully submitted,

       LATHAM & WATKINS LLP

     By:  _George Royle V_____

       George Royle V
       Jeroen van Kwawegen

       885 Third Avenue
       New York, NY 10022
       (212) 906-1200

       Attorneys for *D.B. Zwirn Special Opportunities Fund, L.P.*

16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

D.B. ZWIRN SPECIAL OPPORTUNITIES FUND,
L.P. in its capacity as Administrative Agent,

       Plaintiff,

         -against-

SIMEUS FOODS INTERNATIONAL, INC.,
SIMEUS HOLDINGS, INC., PTF ACQUISITION
CORP., and SIMEUS FOODS
INTERNATIONAL—FOREST CITY, INC.,

       Defendants.

Index No. 604004/07

**COMPLAINT**

LATHAM & WATKINS LLP

*Attorneys for*

885 THIRD AVENUE
NEW YORK, NEW YORK 10022-4802
(212) 906-1200

To

Service of a copy of the within is hereby admitted.

Dated: ...........................................20........